OCTOBER AND NOVEMBER TERM, 1881, No. 26,

## Shettler *et al. versus* Hartman.

1. An oil lease for a term of fifteen years contained a provision " that, after the expiration of the aforesaid thirty days, the second party (lessee) shall pay to the first party (lessor) the sum of one dollar per day, when all the provisions of this lease shall be accorded to the said second party during the payment of one dollar per day to the said first party. . . . The party of the second part covenant to commence operations for said mining purposes within thirty days from the execution of this lease, or thereafter pay to the party of the first part one dollar per day until work is commenced." The lessee not having commenced operations more than a year thereafter, and not having surrendered the lease: *Held,* that the lessor was entitled to recover from the lessee one dollar for each and every day from the time of the expiration of the thirty days to the time of commencement of suit.

2. The failure to pay a dollar the first day after the thirty days expired did not, *ipso facto,* forfeit the lease.

ERROR to the Court of Common Pleas of *Clarion County.*

Covenant, July 9th, 1878, by Conrad Hartman against John Shettler and John C. Reid.

In the trial in the Court below, before JENKS, J., the following facts appeared :

The 16th of May, 1877, plaintiff and defendants executed an instrument under seal, by the terms of which the plaintiff, as party of the first part, leased to the defendants, as party of the second part, a certain tract of twenty-five acres of land in Clarion County, for fifteen years, for the purpose of mining for petroleum, in consideration of the one-sixth part of the petroleum so mined and pumped. The lease proceeded:

"*Provided that after the expiration of the aforesaid thirty days the second party shall pay to the first party the sum of one dollar per day, when all the provisions of this lease shall be accorded to the said second party during the payment of one dollar per day to the said first party.*

" The said party of the first part covenant to grant to the

said parties of the second part the right to remove any machinery or fixtures placed on said premises by the said parties of the second part. The party of the second part covenant to commence operations for said mining purposes within *thirty days* from the execution of this lease, or thereafter pay to the party of the first part *one* dollar per *day* until work is commenced."

The words in italics were inserted in writing, the rest of the lease being printed.

The plaintiff having offered the lease in evidence, and proved that the defendants had not operated under it, rested.

Counsel for defendants offered to show mistake in the execution of the lease, and produced John C. Reid, one of the defendants, who testified, *inter alia:*

Then we agreed that we would take these twenty-five acres on the same terms, thirty days' time to commence, and if we did not operate after that we were to pay him a dollar a day for any time we chose to keep it. . . . I copied our lease from the other man's lease, but I was not lawyer enough to put that in. . . . We were to pay him a dollar a day as long as we chose to hold it that way. If we didn't choose to hold it we could throw it up, relinquish it. We were to go to a justice and have an acknowledgment if we intended to hold it. If we did not conclude to hold it I supposed it was to be dead. . . . We did not agree to pay a dollar a day absolutely, whether we intended to operate or not. We were to have an option as long as we chose by paying a dollar a day. . . . I may have forgotten to write out that part of the lease more plainly and fully, not being used to writing articles. I copied that article very nearly verbatim. It seems to be in the wrong place. It was done in a hurry.

Upon cross-examination he said:

" Question. Did he agree to any other contract than that you should commence operations in thirty days, and on failure pay the dollar a day?

" Answer. That was my understanding.

" Q. Did he agree to any other contract?

" A. The agreement was that we were to have a lease for thirty days, and after that we were to pay him a dollar a day as long as we chose to keep it."

John Shettler, the other defendant, testified, *inter alia:*

We were to have a lease for thirty days. After the thirty days we were to pay a dollar a day, if we chose to keep it, and if not we could not hold the lease. The lease was to be forfeited. That was the understanding or agreement. . . . We did not agree to pay a dollar a day absolutely after the

[Shettler *et al. v.* Hartman.]

thirty days as long as the lease run. . . . I cannot tell exactly how long after the thirty days, but I met Hartman and he said something about that lease, and I said: "You can do just what you please with that lease, for we don't want that lease." . . . Every time he said anything to me about it I said we didn't intend to have anything to do with that lease, because we didn't intend to hold it to operate it.

Upon cross-examination he said:

"Question. Have you surrendered your lease to the present day?

"A. No, sir.

"Q. Have you ever offered him the lease back?

"A. I never had it in my possession.

"Q. Was it the understanding you were to give up the lease if it didn't pay?

"A. Certainly."

Conrad Hartman, the plaintiff, and his wife, S. Hartman, testified that the agreement was that the defendants would commence in thirty days, and if they didn't they were to pay a dollar a day until they would commence.

The Court charged the jury:

" We are requested to instruct you on the points presented by the plaintiff, as follows:

"1. That the written contract between the parties, dated the 16th day of May, 1877, given in evidence in this case by the plaintiff, as the foundation of his action, is the law between the parties; and under its provisions, if the jury find from the evidence that the defendants did not commence to operate for oil on the premises therein described within thirty days from its execution, to wit, on or before the 16th of June, 1877, or at any time thereafter hitherto, plaintiff is entitled to recover in this action one dollar per day for each and every day from the said 16th day of June, 1877, to the commencement of this suit, on the 9th day of July, 1878.

" We answer this point in the affirmative, as qualified in the general charge.

"2. That under the terms and provisions of the said written agreement it was the duty of defendants to proceed and operate for oil on the territory therein described on or before the 16th of June, 1877, and on failure to do so, unless prevented by the plaintiff, plaintiff is entitled to recover in this action, as stated in first point.

" We answer this point in the affirmative, as qualified in the general charge.

" We are required to give our opinion as to the true construction of this article of agreement. We have made it the rule by which the rights of these parties must be determined,.

[Shettler *et al. v.* Hartman.]

and [we instruct you to be governed by this article in making up your verdict, and as we construe it you will construe it, and apply that construction to the facts as proven].

"The party of the first part, in consideration of certain stipulations, conditions, and covenants, leases to the parties of the second part, their successors and assigns, a certain tract of land.

"[In this lease the rights of the defendants are made to depend upon the performance of the covenants given in the lease. One of these covenants required the parties of the second part to commence operations for mining purposes within thirty days from the execution of the lease, or if they do not, it requires them to pay to the party of the first part one dollar per day until work is commenced.

"These are the clear covenants. Now there is a provision that 'after the expiration of the aforesaid thirty days the parties of the second part shall pay to the first party the sum of one dollar per day, when all the provisions of this lease shall be accorded to the said second parties during the payment of the said one dollar per day to the said first party.'

"We think that means this: First, That the parties of the second part must commence operations under this contract within thirty days. Second, That if they do not, they pay one dollar a day until work is commenced. Third, If they do not commence work they have the right, under this covenant, to hold this lease as long as they pleased by paying to the party of the first part one dollar per day; but this right conferred upon them of holding as long as they pleased, upon the payment of one dollar per day, does not destroy the right of the plaintiff (under this covenant on their part to pay one dollar per day) to call upon them for the payment of one dollar per day for at least a reasonable time after they have failed to put down a well.]

"Observe these terms: 'The parties of the second part covenant to commence operations for said mining purposes within thirty days from the execution of this lease, or thereafter pay to the party of the first part one dollar per day until work is commenced.'

"'*Provided*, That after the expiration of the aforesaid thirty days, the second party shall pay to the first party the sum of one dollar per day, when all the provisions of this lease shall be accorded to the said second parties during the payment of the said one dollar per day to the said first party.'

"[So long as they see fit to keep this lease in life, it will be continued in life. But they would not be permitted under that clause to so use it as to destroy the plaintiff's right to recover the sum of one dollar a day for a reasonable time

[Shettler *et al. v.* Hartman.]

after they failed to put down a well.   If the defendants held the lease without giving notice of their determination not to go on to put down a well, then the plaintiff would be entitled to recover, at least, until they should notify the plaintiff that they did not intend to go on and put down a well. That is the instruction for the present.   Now, what time did they notify him that they would not hold it any longer? If you take that view of the case, you give them a verdict of one dollar a day up to that time.]

"You will find your verdict under these instructions."

Counsel for defendants excepted to the charge.

May 7th, 1880.   Verdict for the plaintiff, $331.82, upon which, subsequently, judgment.

The defendants took out a writ of error, assigning as error the answer to plaintiff's first point, and the portions of the charge within brackets.

*B. J. & A. B. Reid* for plaintiffs in error.

In that part of the charge in which the jury were instructed to be governed by the articles in making up their verdict, the Court excluded the parol evidence of what was said and agreed on at the execution of the lease, which would have thrown light on what was obscure in the writing: Selden *v.* Williams, 9 Watts, 9; Chalfant *v.* Williams, 11 Casey, 212. The Court was driven to interpolate into the contract what neither party contended for, namely, that the lessees would be bound to pay the forfeit for a reasonable time, or until they gave notice to the lessor that they did not intend to operate.   Clearly there is no warrant in the writing for that construction.   Which of the other alternatives, then, is the more reasonable and consonant with the true spirit of what is written?   Is it likely that the parties intended or expected that, for not going to the probably fruitless expense of operating, the lessees could be compelled to pay a dollar per day for fifteen years?   Either that or our construction, by which they had the right to keep the lease alive as long as they saw proper to pay the forfeit for not working, and at the same time the lessor's rights are protected.

The vice of the defendant in error's contention and the Court's instructions to the jury is that they alike ignore that written clause in the lease qualifying the printed covenant to pay a forfeit.   Unless that clause means what we contend it means, it is wholly useless and insensible, and might as well have been left out.   For, if left out, the part remaining would bear precisely the construction that the defendant in error puts upon the whole instrument as it is.

[Kinnear *v.* Gealy *et al.*]

*Boggs & Weidner* for defendant in error.

There is nothing in the wording of the proviso itself that removes the covenant to operate or pay the dollar a day, abridges the terms of the lease, or forfeits the contract.

The alleged parol agreement is utterly at variance with the written lease: Martin *v.* Berens, 17 P. F. Smith, 462; Miller *v.* Smith, 9 Casey, 386; Shepler *v.* Scott, 4 Norris, 332; Callan *v.* Lukens, 8 Norris, 134.

The view of the Court that defendants below should be responsible for the dollar per day until they gave notice of their intention to forfeit, was a middle course which has done them no injustice.

PER CURIAM: There is nothing in the charge to the jury of which the plaintiff in error has any right to complain. The terms of the written lease were very clear, and there was no discrepancy between the written and the printed part. The lessees were to commence operations within thirty days, or thereafter pay one dollar a day until work was commenced. Allowing full effect to all the parol evidence, there was nothing to contradict or vary the writing. It is all the same thing in different words. The lessees cannot pretend that they could hold on to the lease indefinitely without paying anything, and the idea propounded that the failure to pay a dollar the first day after the thirty days expired, *ipso facto*, forfeited the lease cannot be entertained for a moment. It was, at least, the part of the lessees to put an end to it by a surrender, or an offer to surrender it.

Judgment affirmed.